IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2017

## EDDIE CHARLES WARLICK v. STATE OF TENNESSEE

Appeal from the Circuit Court for Gibson County (Humboldt Law Court)
No. H9508     Clayburn Peeples, Judge

No. W2017-00703-CCA-R3-PC

The petitioner, Eddie Charles Warlick, appeals the denial of his petition for post-conviction relief, which petition challenged his 2015 guilty-pleaded conviction of second degree murder, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit (Humboldt Law) Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Christie Hopper, Jackson, Tennessee, for the appellant, Eddie Charles Warlick.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Garry Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged with first degree murder, the petitioner entered a best interests plea of guilty to second degree murder in exchange for a sentence of 20 years with a 100 percent release eligibility percentage. At the November 17, 2015 guilty plea submission hearing, the State summarized the facts of the case. After "an evening of watching movies, drinking alcohol and potentially using illicit drugs," the petitioner's long-time girlfriend Bernice Boykin sustained severe injuries that led to her death. The medical examiner concluded "that Bernice Boykin was killed by a method of strangulation . . . . that could have lasted up to minutes." At approximately 12:30 a.m., the petitioner telephoned a friend and said, "'I think I killed someone.'" At approximately 5:00 a.m., the petitioner telephoned 9-1-1 and reported that he had discovered the victim "unresponsive in his bed, at which time he admitted to attempting

to revive her by beating on her chest . . . as well as grabbing her around her throat and shaking her as well as slapping her on her face." The petitioner "made multiple spontaneous" admissions to the police officers who arrived on the scene "as well as to a gentleman in the booking room."

In the plea submission hearing, the petitioner's counsel indicated that the petitioner's version of the events was different than that provided by the State. According to counsel, the petitioner "acknowledges that there was some type of altercation that occurred" and that the petitioner and the victim "had been drinking heavily." Counsel added that the victim, who had recently been released from prison following her service of a sentence imposed for a conviction of aggravated assault, "could . . . have violent tendencies also in her life." The petitioner agreed that his attorney had presented a "fair statement" of the facts.

Less than one month later, the petitioner filed a pro se motion "for correction or reduction of sentence or post-conviction relief," alleging that his guilty plea was the product of the ineffective assistance of the two attorneys who represented him. In an amended petition for post-conviction relief, the petitioner alleged that his guilty plea was the result of coercion or duress "by his trial counsel and/or the trial court." He also reiterated his claim that he was deprived of the effective assistance of counsel because his counsel failed to adequately investigate the case, review the evidence, and communicate to him the facts and evidence.

At the February 10, 2017 evidentiary hearing, the petitioner, who was represented at trial by the district public defender and an assistant district public defender, testified that the assistant district public defender "was the main one representing me." The petitioner said that he had a poor working relationship with the assistant district public defender, his primary counsel, and that this caused him to insist that the district public defender become involved in the case. The petitioner said that primary counsel provided him with the discovery materials but that primary counsel did not provide him "all of it." The petitioner testified that he wrote a letter to the trial court because he "wanted the police report, the police videos, motion for discovery results, psychiatry reports, autopsy report, phone records." He could not say with any specificity, however, what primary counsel had failed to provide him or how the lack of any particular piece of potential evidence influenced his decision to enter a guilty plea.

The petitioner testified that counsel provided him with "one little piece of letter that had Bufford on it." "Bufford," he said, was an inmate who had recently been moved into the same "pod" as the petitioner at the jail. The petitioner claimed that "Bufford" was "coming trying to talk to" the petitioner, "to cozy up to" him. The petitioner said, "He was telling me about things that I hadn't told nobody but my lawyer.

-2-

He was telling about how I came to the police station." He said that when he saw Bufford's name in the discovery materials, he believed that primary counsel was "putting out evidence telling people things about [his] case." The petitioner testified that he wrote to primary counsel repeatedly but that primary counsel refused to visit him in the jail. The petitioner said that he wrote to "CAPS" to report primary counsel.

The petitioner said that on the day he entered his plea, he believed he was there for trial and that he was ready to proceed. He claimed that instead of going into the courtroom, he and primary counsel went into the judge's chambers, where the judge told him, "'I'm going to give you 60 years,'" and, "'You'd better talk to your lawyer.'" After leaving the judge's chambers, the petitioner went into a "little side room" with primary counsel and the district public defender. The petitioner said that he "talked to" the district public defender "about withdraw[ing] a plea 'cause [he] was made to take a plea." The petitioner testified that he also discussed the process for withdrawing a guilty plea with an inmate at the jail, who told him, "'Well, you can write a post-conviction,'" which pleading the petitioner admitted he had "already been going to the law library . . . trying to research" even before pleading guilty.

The petitioner insisted that he decided to plead guilty after the trial judge indicated that he would sentence the petitioner to 60 years. The petitioner acknowledged that the transcript of the guilty plea submission hearing did not reflect a discussion with the trial court where the judge stated that he would impose a sentence of 60 years if the petitioner refused to plead guilty. The petitioner claimed that the transcript was inaccurate, saying,

> [T]he first part of this thing starts . . . off like this and it didn't happen that way. See, we didn't talk about this plea or nothing [sic] else. I had already went to the room first thing. I went in. Judge told me that. He said, "Well, you'd better talk to your lawyer." We walked out, walked to that room. I signed for the 20 years. Then we come [sic] back.

The petitioner said that he had been warned by police officers that if he went to trial, the trial judge would "'give you the max, anything you do.'" The petitioner insisted that the transcript inaccurately recorded him as saying, "'Yes, sir. Yes, sir,'" in response to the trial court's question whether he was pleased with his representation.

The petitioner testified that he wanted to take responsibility for his role in the victim's death and that he would be willing to drop his bid for post-conviction relief "if the State would drop down five – 15 years" and "dropped from a hundred percent to something sort of like 65."

During cross-examination, the petitioner maintained that the transcript did not accurately reflect everything that transpired on the day he pleaded guilty and that he felt the trial court coerced him to plead guilty by threatening to impose a sentence of 60 years.

At the conclusion of the hearing, the post-conviction court indicated that granting post-conviction relief would be "the worst thing the Court could do in terms of the [petitioner's] best interest right now." The court observed that the petitioner had failed to establish that his counsel had done "anything but adequately represent him." At that point, post-conviction counsel moved the post-conviction judge to recuse himself, and the post-conviction judge flatly refused.

The court reiterated its findings in a written order denying relief. The court found that the petitioner "had ample opportunity to meet with his attorney prior to his plea," that he "had numerous meetings with attorneys and investigators from the public defender's office for months before trial, as well as the days before and morning of trial," and that "there was no duress or coercion placed upon the [petitioner] by his attorneys or the Court system." The post-conviction court concluded that the petitioner "is basically unhappy with the number of years he received in his plea bargain" and that "[t]he fact that he continues to desire a sentence of 15 years, rather than the 20 year sentence he accepted, is not a basis for Post-Conviction relief."

In this timely appeal, the petitioner again asserts that his guilty plea was not knowingly and voluntarily entered because it was the product of the deficient representation provided by his counsel and of the coercive actions of the trial court.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a

claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984).  In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief.  *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted).  We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings.  *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily.  "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)).  A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  When reviewing the application of law to the post-conviction court's

factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the denial of post-conviction relief. No evidence supports any of the factual allegations made by the petitioner. The transcript of the guilty plea submission hearing reflects that the trial court accurately informed the petitioner that a conviction of first degree murder carried an automatic sentence of life imprisonment, which equates to a service of 100 percent of 60 years minus any eligible credits up to 15 percent. *See State v. Kermit Penley*, No. E2004-00129-CCA-R3-PC, slip op. at 4 (Tenn. Crim. App., Knoxville, Nov. 1, 2004) (stating that "a defendant sentenced to life is entitled to be released, as opposed to being paroled, after serving 100 percent of sixty years less any eligible credits so long as they do not operate to reduce the sentence by more than 15 percent, or nine years"). Accurately informing the petitioner of the potential sentence does not equate to a threat or an act of coercion on the part of the trial court. Although no evidence in the record contradicts the petitioner's claim that his relationship with primary counsel was contentious, a contentious relationship with counsel, standing alone, would not entitle the petitioner to relief. Certainly nothing in the record suggests that counsel represented the petitioner with anything less than the constitutionally required zeal. We agree with the post-conviction court that, at bottom, the petitioner's grievance is with the sentence imposed and not with the quality of the representation provided by his counsel.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE